**AFFIRMED; and Opinion Filed June 25, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00981-CR

**RORY HOGENSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 063011**

# MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Schenck

Rory Melvin Hogenson appeals his conviction for retaliation. In his sole issue on appeal, he claims that he was denied his right to a speedy trial in violation of the Sixth Amendment to the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure. We affirm the trial court's judgment. Because all issues are well settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND FACTS

Every few weeks for nearly a year, appellant threw nails in the driveway of State Trooper Michael Landeros in an apparent effort to retaliate for a previous DWI arrest. On May 14, 2013, appellant was arrested for retaliation and stalking. At appellant's arraignment the next day, the judge set his bail bonds at $25,000 each for the charges of retaliation and stalking. After the indictment was filed on June 5, 2013, the bail bonds were reduced to $10,000 each. On June 18,

2013, appellant's attorney filed a motion to further reduce his bonds, which was later denied. Appellant was unable to pay for the bonds and remained in custody.

The State and appellant initially agreed to a setting on the court's plea docket on July 25, 2013, and subsequently agreed to move the setting to August 8, 2013, and later to September 12, 2013. On August 9, 2013, appellant's counsel filed a motion to withdraw, which was granted on August 13, 2013. Approximately a week later, another attorney was appointed to represent appellant. On August 22, 2013, a third attorney filed a motion to substitute counsel, which was granted on August 27, 2013. On September 12, 2013, appellant agreed to a trial date of November 18, 2013.

On October 30, 2013, appellant filed his motion for speedy trial, under federal and state law, arguing that he would be prejudiced if his trial were held any later than November 18, 2013. The trial court ordered a hearing on appellant's motion for speedy trial to take place on November 14, 2013, at which time, the State asserted it would not be ready for trial because its witness Shane Ford, the primary investigating officer, was no longer with the Van Alstyne Police and instead was employed outside of the country. Appellant did not object to the continuance, and the court reset the trial date for December 2, 2013. At the same hearing on appellant's motion for speedy trial, appellant requested to be released on personal bond, to which the trial court agreed and set the bonds at $1,500 each for the charges of retaliation and stalking. Appellant was released that same day. The next day, the trial court granted appellant's motion for speedy trial and confirmed the resetting of the trial date for December 2, 2013.

On November 18 and 20, 2013, the State filed motions to continue on the grounds that Mr. Ford would be out of the country until August 2014 and his testimony was material to the State's case. On November 21, 2013, the trial court conducted a hearing on the State's motions to continue and requested a brief on the effect of appellant's release from jail on his motion for

speedy trial.  On November 25, 2013, appellant filed the requested brief in which appellant argued the trial date should remain December 2, 2013.  Later, on December 11, 2013, the trial court granted appellant's motion for speedy trial to the extent the case was reset for trial on January 6.  The following week, the State filed a response to appellant's motion for speedy trial, asserting appellant failed to show a violation of his right to a speedy trial and requested the trial court reconsider its order setting the case for trial on January 6, 2014, urging a trial in February in a separate motion.  On January 6, 2014, the State requested and the trial court granted additional time to obtain a date on which Ford would be available to testify.  Trial commenced on April 21, 2014.

### THE RIGHT TO A SPEEDY TRIAL

The Sixth Amendment to the Constitution of the United States, made applicable to the states through the Fourteenth Amendment, guarantees a defendant the right to a speedy trial.  U.S. CONST. amend. VI; *Klopfer v. North Carolina*, 386 U.S. 213 (1967).  In addition, Article I, § 10 of the Texas Constitution guarantees the defendant in all criminal prosecutions the right to a speedy and public trial, and article 1.05 of the Texas Code of Criminal Procedure provides that in all criminal trials the defendant shall have a speedy public trial by an impartial jury.  Tex. Const. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05.  Texas courts analyze both federal and state law speedy-trial claims using the factors identified by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): (1) length of the delay, (2) reason for the delay, (3) assertion of the right to a speedy trial, and (4) prejudice to the defendant.  *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

We analyze the strength of each of the above factors and then balance their relative weights in light of the conduct of both the prosecution and the defendant.  *Id.*  None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right of

speedy trial. *Id.* Instead, they are related factors, which must be considered together with any other relevant circumstances. *Id.* While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing of prejudice. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). However, if the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1991) (en banc). The defendant's burden of proof on the latter two factors varies inversely with the State's degree of culpability for the delay. *Cantu*, 253 S.W.3d at 280. Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial. *Id.* at 280–81.

## STANDARD OF REVIEW

In reviewing the trial court's ruling on appellant's speedy-trial claims, we apply a bifurcated standard of review: an abuse of discretion for the factual components and a *de novo* standard for the legal components. *Cantu*, 253 S.W.3d at 282. Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question. *Id.* Under the abuse of discretion standard, we defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts. *Id.* All of the evidence must be reviewed in the light most favorable to his ultimate ruling. *Id.*

## DISCUSSION

### I.  Length of the Delay

Before a court engages in an analysis of each *Barker* factor, we first measure the length of delay to determine if it triggers a speedy-trial analysis. *Gonzales v. State*, 435 S.W.3d 801,

808 (Tex. Crim. App. 2014). The length of delay is measured from the time of the initial charge until trial or appellant's demand for a speedy trial. *Zamorano*, 84 S.W.3d at 648. The length of delay necessary to provoke further inquiry depends on the facts and circumstances of each case. *Barker*, 407 U.S. at 530. The delay that can be tolerated for minor crimes is considerably less than for serious, complex charges that require more time and preparation to proceed with trial. *Id.* at 531. In general, delay approaching one year is sufficient to trigger a speedy-trial inquiry. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Here, appellant was arrested on May 14, 2013, and trial commenced April 21, 2014, nearly eleven months after his arrest. Thus, the delay triggers further analysis under the *Barker* factors. However, the delay does not stretch beyond the bare minimum needed to trigger a full analysis, and appellant's trial commenced less than six months after his motion for speedy trial, so this first *Barker* factor does not weigh heavily against the State. *Gonzales*, 435 S.W.3d at 809.

## II. Reasons for the Delay

Related to the length of delay is the reason the State assigns to justify the delay. *Id.* We assign different weights to different reasons. *Id.* Deliberate attempts to delay the trial in order to hamper the defense should be weighted heavily against the State. *Id.* A more neutral reason like negligence or overcrowded courts should be weighted less heavily, but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the State rather than appellant. *Id.* Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. *Id.* at 809–10.

The State argues that appellant was responsible for a portion of the delay because appellant changed counsel twice and agreed to reset his case three times up until his October 30, 2013 motion for speedy trial, which requested the trial take place no later than November 18, 2013. According to the State, the remaining amount of delay from appellant's motion for speedy

–5–

trial until trial commenced on April 21, 2014, can be attributed to the State's documented difficulty in compelling the presence of a material witness for the State, Mr. Ford. Appellant contends the reason for the delay was an allegedly unavailable witness whose testimony "might not have been absolutely material . . . based on testimony that could have been offered through other officers."

The record reflects that the appellant agreed to resetting his hearing date up until his October 30, 2013 motion for speedy trial. Accordingly, the five months of delay appellant agreed to cannot be counted against the State. *Celestine v. State*, 356 S.W.3d 502, 507 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The record contains evidence to establish Mr. Ford was the primary investigating officer and that he was employed outside of the country. Given the foregoing evidence and the fact that the trial court granted the State's motions for continuances and requests for additional time to secure Mr. Ford's testimony, we conclude the trial court determined Mr. Ford was a material witness and unavailable to testify, and we defer to such findings. *Cantu*, 253 S.W.3d at 282. While Mr. Ford may not have been missing, he was certainly unavailable in that he was out of the country throughout the relevant period. *Gonzales*, 435 S.W.3d at 809–10. We conclude this was a valid reason that justified the remaining delay of approximately five months. *Id.*

## III.    Assertion of the Right

Whether and how a defendant asserts his speedy-trial right is closely related to the other three factors because the strength of his efforts will be shaped by them. *Zamorano*, 84 S.W.3d at 651. Therefore, the defendant's assertion of his speedy-trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id.* Conversely, a failure to assert the right makes it difficult for a defendant to prove that he was denied a speedy trial. *Id.*

Appellant first asserted his right to a speedy trial on October 30, 2013, nearly six months after his arrest. There is no evidence in the record to indicate appellant objected to the resettings before that date. At the hearing on appellant's motion for speedy trial, appellant did not object to the State's motion for continuance. Instead, appellant requested that if the trial court granted a continuance, it would also release appellant on a personal bond. At a later hearing on a motion to suppress on January 3, 2014, appellant objected to the State's request for a continuance on the grounds that appellant could not get a job because he had a pending felony charge against him. In both his motion for speedy trial and his objections at the January 3, 2014 hearing, appellant requested a trial, not a dismissal of the indictment. Appellant's repeated assertions of his speedy-trial right weigh in his favor. *Id.*

## IV.    Prejudice Caused by the Delay

Because pretrial delay is often both inevitable and wholly justifiable, the fourth *Barker* factor examines whether and to what extent the delay has prejudiced the defendant. *Cantu*, 253 S.W.3d at 285. When we analyze prejudice, we do so in light of interests the Speedy Trial Clause was designed to protect: to prevent oppressive pretrial incarceration, to minimize anxiety and concern of the defendant, and to limit the possibility that the defense will be impaired. *Gonzales*, 435 S.W.3d at 812. The last interest is the most important because the fairness of the entire criminal-justice system is distorted when a defendant is unable to adequately prepare his defense. *Id.*

Appellant was in jail for a total of 185 days from the time of his arrest until he was released on bond after the November 14, 2013 hearing, which was fifteen days after his motion for speedy trial. We note the record contains evidence that on the same date of his arrest for retaliation and stalking, appellant was also arrested for driving while intoxicated and held without bond. In his motion to reduce bond, appellant indicated he was sentenced to 365 days in

–7–

jail for the offense of driving while intoxicated and that he was granted a work release, which would mean that if he were able to pay for his bonds, he could work during the day and return to the jail each night. Accordingly, any amount of prejudice he suffered from his 185 days in jail was virtually nonexistent because appellant was already incarcerated on a different offense. *Kelly v. State*, 163 S.W.3d 722, 730 (Tex. Crim. App. 2005).

Additional evidence of prejudice appellant suffered appears in a speedy-trial brief the trial court requested at the November 21, 2013 hearing on the State's motion to continue. In the requested brief, appellant asserted he and Trooper Landeros lived in the same town and that Trooper Landeros had advised appellant not to pass by his house anymore, which made it difficult for appellant to travel to work or the store. According to appellant's speedy-trial brief, he was afraid Trooper Landeros might arrest or further harass him and that because Trooper Landeros told other officers appellant committed the offense, appellant faced increased judgment, persecution, and scrutiny, leading to increased anxiety. Appellant also asserted, without elaboration, that the preparation of his defense might be delayed because the memories of his witnesses would fade and as time passed the witnesses would be harder to find. At the January 3, 2014 hearing, appellant's counsel argued appellant could not get a job because he had a pending felony.

Given the delay of less than a year from arrest and less than six months from invocation of his speedy-trial right, we can perceive little prejudice in either its nature or its extent. Prejudice in the form of access to witnesses or reduced recollection is surely a possible ground of material prejudice, but none has been shown here. Rather, it was merely alleged. Likewise, interference with job prospects and subjective travel concerns may constitute relevant prejudice in certain circumstances. But, in this case, appellant merely alleged concerns that would be true for any defendant facing the charge and established no prejudice of the type or extent sufficient

to shift the burden to the State. *Munoz*, 991 S.W.2d at 826-30; *see also Barker*, 407 U.S. at 534 (prejudice was "minimal" where defendant lived "for over four years under a cloud of suspicion and anxiety" and spent "ten months in jail before trial," and the record indicated "only two very minor lapses of memory" which "were in no way significant to the outcome"). Accordingly, the prejudice factor does not weigh in appellant's favor.

## V.    Balancing of Factors

Finally, we must balance the *Barker* factors with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed. *Cantu*, 253 S.W.3d at 281. The constitutional right is that of a speedy trial, not dismissal of the charges. *Id.* In this case, the delay itself was not excessive or extraordinary, there was a valid reason for the delay, there was an assertion by appellant of his right to a speedy trial, and any prejudice to appellant was minimal. We cannot conclude appellant's right to speedy trial was violated.

## CONCLUSION

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140981F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RORY HOGENSON, Appellant

No. 05-14-00981-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 063011.
Opinion delivered by Justice Schenck.
Justices Bridges and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of June, 2015.